Filed 9/23/21  P. v. Rodas CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIO ROBERTO RODAS,<br><br>Defendant and Appellant. | C090919<br><br>(Super. Ct. No. CRF2019559)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

Appellant filed a petition for rehearing with this court.  It is ordered that the nonpublished opinion filed herein on August 31, 2021, be modified as follows:

1. At page 3, modify the first sentence of the first full paragraph that begins with "We conclude" so that it reads in its entirety:

    We conclude the court erred in imposing consecutive sentences for both counts 2 and 3 under section 654.

2. At page 31, in the second paragraph, modify the second sentence that begins with "However, a review" so that it reads in its entirety:

A review of the record demonstrates the jury based its conviction on the sodomy, thereby foreclosing the trial court from relying on a different set of facts in applying section 654.

3. At page 32, in the first partial paragraph, delete the last two sentences of the paragraph and replace them with:

Rather, the jury must have based count 2 on the rape. Thus, the court erred in imposing consecutive sentences on both counts 2 and 3. Nonetheless, in light of our conclusion that the court also erred in imposing a One Strike sentence on count 3, on remand the court should stay count 3 under section 654 as the shorter sentence.

4. At page 34, in the second sentence of the Disposition, replace "count 2" with "count 3" so the sentence reads:

On resentencing, the sentence on count 3 shall be stayed and the trial court may not impose One Strike sentences on counts 3, 8, 9, 10, 12, 13, 14, or 15 under section 667.61.

This modification results in a change in judgment. Appellant's petition for rehearing is denied.

BY THE COURT:

/S/

_____
MAURO, Acting P. J.

/S/

_____
HOCH, J.

/S/

_____
RENNER, J.

2

Filed 8/31/21  P. v. Rodas CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C090919 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2019559) |
| v. | |
| MARIO ROBERTO RODAS, | |
| Defendant and Appellant. | |

A jury convicted defendant Mario Roberto Rodas of forcible rape of a child under the age of 14 (Pen. Code, §§ 261, subd. (a)(2), 264, subd. (c)(1)[1]—count 1); a lewd and lascivious act on a child under the age of 14 by force or violence (§ 288, subd. (b)(1)—count 2); sodomy of a child under the age of 14 and more than 10 years younger than him (§ 286, subd. (c)(1)—count 3); sexual intercourse with a child 10 years old or younger (§ 288.7, subd. (a)—count 4); sodomy with a child 10 years old or younger (§ 288.7, subd.

---

[1]  Undesignated statutory references are to the Penal Code.

1

(a)—count 5); aggravated kidnapping (§ 209, subd. (b)(1)—count 6); criminal threats (§ 422, subd. (a)—count 7); and seven counts of a lewd and lascivious act on a child under the age of 14 (§ 288, subd. (a)—counts 8, 9, 10, 12, 13, 14, and 15).[2] The first nine counts pertained to one of defendant's daughters. The remaining convictions were for earlier lewd and lascivious acts on an older daughter, her brother, and a relative of his younger daughter. The jury found true as to counts 1 through 3 that defendant used a deadly weapon in the commission of the offense (§ 12022.3, subd. (a)), defendant kidnapped the victim and the movement of the victim substantially increased the risk of harm (§ 667.61, subds. (e)(1) [kidnapping], (d)(2) [aggravated kidnapping]), defendant personally used a dangerous or deadly weapon in the commission of the offense (§ 667.61, subd. (e)(3)), and the victim was under the age of 14 (§ 667.61, subd. (j)(1)). As to counts 2 and 3, the jury found true that defendant personally inflicted bodily harm. (§ 667.61, subd. (d)(7).) As to counts 4 through 7, the jury found true that defendant personally used a deadly weapon. (§ 12022, subd. (b)(1).) The jury also found true a multiple victim allegation under section 667.61, subdivision (e)(4) that we will discuss in further detail below.

The trial court sentenced defendant to three consecutive sentences of life without the possibility of parole (counts 1 through 3), seven consecutive terms of 15 years to life (counts 8, 9, 10, 12, 13, 14, and 15), and a determinate term of three years plus one year for the personal use of a deadly weapon enhancement (§ 12022, subd. (b)(1)) on count 7. The sentences on counts 4 through 6 were stayed pursuant to section 654.

On appeal, defendant argues: (1) the trial court erred by permitting the prosecutor to use voir dire to bind jurors to his theory that delayed reporting is not indicative of dishonesty; (2) the court erred in instructing the jury with CALCRIM No. 1193; (3)

---

[2] The prosecution dismissed count 11.

cumulative error necessitates the reversal of his convictions; (4) the court erred in failing to instruct the jury on one of the requirements for tolling the statute of limitations on count 13; (5) the imposition of enhanced sentencing under section 667.61 on counts 3, 8, 9, 10, 12, 13, 14, and 15 was improper; (6) insufficient evidence supports his conviction for aggravated kidnapping and the jury's findings of kidnapping and aggravated kidnapping circumstances under section 667.61; (7) the sentence on count 2 should have been stayed pursuant to section 654; and (8) his trial counsel rendered ineffective assistance by not objecting to the court's imposition of certain fees and fines and not requesting a hearing to determine his ability to pay them.

We conclude the sentence on count 2 should have been stayed. Further, the trial court erred in imposing enhanced sentences on counts 3, 8, 9, 10, 12, 13, 14, and 15 under section 667.61. The case is remanded for resentencing consistent with this opinion. Additionally, we agree with the People that there was a clerical error in the abstract of judgment. We direct the trial court to make the appropriate correction on remand. In all other respects, we affirm the judgment.

## I. BACKGROUND

### A. J. (Counts 12-14)

Sometime between 1994 and 1996, defendant was living with J. and his mother. One day when J.'s mother was doing laundry, defendant had J. lock the door and then perform oral sex on him. J. was between two and four years old at the time.

When J. was five or six years old, he woke up from a nap to realize defendant was using his penis to rub J.'s "behind." Eventually, defendant penetrated J.

When J. was 10 or 11 years old, his mom was no longer dating defendant, but J. was allowed to visit him. On one occasion, J. woke up to defendant penetrating his anus.

### B. Older Daughter (Count 10)

J.'s younger sister is defendant's older daughter. She did not live with defendant and does not remember spending time with him until she was seven or eight years old and

she would visit defendant, his girlfriend, and her children, which included defendant's younger daughter. On one visit when the older daughter was about nine years old, defendant touched her vagina over her clothes for a couple of minutes when they were alone in the living room.

## C.     R. (Count 15)

In 2009 or 2010, when R. was around 10, she slept over at defendant's house. R. is related to defendant's girlfriend and her children. R. slept on the floor of defendant's room with one of the other children. At the time, the younger daughter was a baby. R. woke up to defendant touching her. Defendant had his hand under R.'s shirt and was rubbing her chest and stomach.

## D.     Younger Daughter (Counts 1-9)

In late December 2018 or early January 2019, defendant touched his younger daughter on at least two separate occasions. She was 10. One night, defendant came into her room when she was trying to sleep. Defendant took her pants down and touched her vagina.

The next night, while her mother was at work, defendant came into his younger daughter's room when she was asleep and touched her vagina over her pajamas. This time, "[i]t was more inside." Afterwards, she told her mother. Her mother told defendant not to come back to the house, but he returned anyway.

One night two weeks later, her mother was at work again, and the younger daughter was on a mattress on the floor of her oldest brother's room because she was afraid to be alone in her room. She was pretending to sleep when defendant came in and gave her brother marijuana. Before he left, defendant said, "I wanted to give this to you because this is probably the last time I'm going to see you."

After the brother appeared to be asleep, defendant returned. He laid down on the mattress next to his daughter and started touching her vagina over her pajamas. She pushed defendant away and ran to the living room where her other brother was sleeping.

4

She sat down on the couch and wrapped her arms around her knees. Defendant came to the living room with his pocketknife and whispered that if she yelled he would kill her and her brothers. Defendant carried his daughter into his bedroom, closed the door, and put her on the bed.

Defendant told his daughter not to scream and undressed them both. He penetrated her vagina with his penis. Then, defendant put his penis inside of her anus. His body went up and down for what felt like a long time. Defendant stopped when one of her brothers knocked on the door.

## II. DISCUSSION

### A. *Claims Related to Child Sexual Abuse Accommodation Syndrome*

"[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301.) Thus, in California, "it has long been held that in a judicial proceeding presenting the question whether a child has been sexually molested, [testimony regarding] CSAAS [(Child Sexual Abuse Accommodation Syndrome)] is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse." (*In re S.C.* (2006) 138 Cal.App.4th 396, 418.) The prosecution introduced testimony on CSAAS through an expert on the subject.

Defendant raises two claims related to CSAAS. He argues the trial court violated his right to an impartial jury by permitting the prosecutor to use voir dire to bind jurors to his theory that delayed reporting is not indicative of dishonesty. Defendant also contends

5

the court improperly instructed the jury on how it could use the CSAAS evidence. Additionally, defendant asserts the cumulative effect of these two errors violated his right to due process. We disagree with each of defendant's contentions and conclude no cumulative effect of any assumed error warrants reversal.

1. *Voir Dire*

a. *Trial Court Proceedings*

During voir dire, the prosecutor asked a potential juror, if a victim of a sexual crime "reported that crime years later, would that fact alone be a reason for you to not believe anything that they're saying?" When the potential juror replied, "No," the prosecutor asked, "Why not?" Defense counsel's objection to the follow-up question was overruled. The juror clarified that, "I meant I would still believe them even if it happened and they were just coming forward with it." The prosecutor asked if anyone disagreed. Juror No. 10 indicated he did and stated, "I think it would depend on the amount of time, and if the story had stayed consistent."

Defense counsel objected again after the prosecutor asked, "What if [the victim] never reported until one time?" This objection was also overruled. The prosecutor rephrased the question: "[W]hat about reporting years later would give you cause for concern in terms of a witness's believability?" Juror No. 10 ultimately indicated "there would have to be other evidence to corroborate it."

Later during voir dire, a prospective juror, Jim, stated, "I think I might have some bias depending on their age, if they were an adult and they waited a really long time, if I could believe everything they're saying."

The prosecutor had the following exchange with Jim:

"[Prosecutor]: Would that fact alone . . . cause you to disbelieve everything that they're saying?

"PROSPECTIVE JUROR: No. It depends on what kind of position they were in in life, if they were—they couldn't speak English or something like that, they weren't

6

comfortable going to the authorities or if there was something in their culture, I would take that into consideration.

"[Prosecutor]: What if they are adults now, and the conduct happened over ten years before?

"PROSPECTIVE JUROR: I think I would have bias against that, because I would wonder if you're an adult, why wouldn't you go get help?

"[Prosecutor]: . . . in that situation, would you just right then and there, just based on that alone, discount everything that they're saying?

"PROSPECTIVE JUROR: No, I wouldn't.

"[Prosecutor]: How would you be able to work through it?

"PROSPECTIVE JUROR: Look at the facts and see how the situation really was."

The prosecutor also asked other potential jurors whether delayed reporting alone would cause them to disbelieve a witness.

When discussing challenges to potential jurors for cause, the prosecutor indicated he was concerned Jim appeared to be biased against children who reported later as adults. The trial court found no basis to exclude Jim for cause and stated, "my view is that your questions were trying to limit his view only to the fact that it was late reported, and not even consider other factors that might apply." The prosecutor later used a peremptory challenge to excuse Jim.

   *b. Analysis*

Defendant argues the trial court violated his right to an impartial jury by permitting the prosecutor to use voir dire to bind jurors to his theory that delayed reporting is not indicative of dishonesty. We disagree.

"During any [voir dire] examination conducted by counsel for the parties, the trial judge shall permit liberal and probing examination calculated to discover bias or prejudice with regard to the circumstances of the particular case or the parties before the

7

court." (Code Civ. Proc., § 223, subd. (b)(1).) "A trial court has ' "wide latitude" ' in the conduct of voir dire, including with respect to the questions to be asked and their format. [Citations.] Voir dire must be ' " ' "reasonably sufficient to test the jury for bias or partiality." ' " ' [Citation.] But '[i]t is not the purpose of voir dire to " 'educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law.' " ' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 915.) "We consider whether there is a reasonable likelihood the jury construed or applied any of the prosecutor's improper remarks in an objectionable fashion." (*People v. Castillo* (2008) 168 Cal.App.4th 364, 385.) "The trial judge's exercise of discretion in the manner in which voir dire is conducted, . . . is not cause for a conviction to be reversed, unless the exercise of that discretion results in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution." (Code Civ. Proc., § 223, subd. (g).)[3]

As we have discussed, our Supreme Court has recognized that expert testimony on the common reactions of child molestation victims " 'is needed to disabuse jurors of commonly held misconceptions about child sexual abuse' " including those related to a delay in reporting. (*People v. McAlpin*, *supra*, 53 Cal.3d at p. 1301.) Thus, we cannot conclude the trial court abused its discretion in allowing the prosecution to question

---

[3] Defendant cites the definition of an improper question in Code of Civil Procedure section 223, subdivision (b)(3). Read in context, this definition is unhelpful to defendant's particular claim in that it does not present a different framework for evaluating it. The statute provides "[t]he trial judge should permit counsel to conduct voir dire examination without requiring prior submission of the questions unless a particular counsel engages in improper questioning." (Code Civ. Proc., § 223, subd. (b)(1).) "For purposes of this section, an 'improper question' is any question that, as its dominant purpose, attempts to precondition the prospective jurors to a particular result or indoctrinate the jury." (*Id*., subd. (b)(3).) Thus, the statute suggests no further remedy for an improper question beyond preapproval of questions.

8

jurors about whether they actually held this misconception. Defendant argues the law does not preclude a juror from rejecting a victim's testimony solely on the ground of delayed reporting. That is true, but as we read the record here, the prosecutor was not attempting to indoctrinate the jury. The prosecutor did not offer any evidence or improper comment on CSAAS during voir dire. Nor did the prosecutor compel the jury to vote a particular way. The prosecutor did not bind the jury to a theory that delayed reporting was irrelevant to the question of honesty in part because he did not argue it was irrelevant. Rather, the prosecutor was probing whether the jurors would examine more than just the fact of delayed reporting in reaching their conclusion. In essence, the prosecutor was asking whether the jury had an open mind. (Cf. *People v. Clark* (1990) 50 Cal.3d 583, 597 ["The inquiry is directed to whether, without knowing the specifics of the case, the juror has an 'open mind' on the penalty determination"].) We discern no impermissible attempt by the prosecutor to influence the prospective jurors to vote guilty based on the facts of the case; nor do we perceive a reasonable likelihood the jury understood or applied any of the remarks during voir dire in an erroneous or improper manner.

Defendant relies on various authorities from Texas, where "the prohibition on commitment questions is a well-established aspect of Texas criminal practice." (*Lydia v. State* (Tex.Crim.App. 2003) 109 S.W.3d 495, 497.) California lacks a similar line of authorities and we are not bound by out-of-state authorities. (*People v. Troyer* (2011) 51 Cal.4th 599, 610.) Further, none of the authorities defendant cites reached the question of whether the asking of a commitment question required reversal of a conviction. (See *Mendez v. State* (2020) (Tex.Ct.App. 2020) 612 S.W.3d 443, 449 [not a commitment question]; *Blackwell v. State* (Tex.Ct.App. 2006) 196 S.W.3d 1, 21 [concluding question was proper]; *Lydia*, *supra*, at p. 500 [remanding for further analysis under remaining prongs of test for improper commitment questions]; *Standefer v. State* (Tex.Crim.App.

9

2001) 59 S.W.3d 177, 183 [affirming trial court's decision to prohibit defense counsel from asking question].)

Even assuming some of the prosecutor's comments crossed the line, we cannot conclude reversal is warranted under California law. "The prosecutor's statements . . . were not legally erroneous, and defendant had ample opportunity to correct, clarify, or amplify the prosecutor's remarks through his own voir dire questions and comments. [¶] Moreover, as a general matter, it is unlikely that errors or misconduct occurring during voir dire questioning will unduly influence the jury's verdict in the case. Any such errors or misconduct 'prior to the presentation of argument or evidence, obviously reach the jury panel at a much less critical phase of the proceedings, before its attention has even begun to focus upon the penalty issue confronting it.' " (*People v. Medina* (1995) 11 Cal.4th 694, 741.) The jury was correctly instructed on the prosecution's burden of proof beyond a reasonable doubt with CALCRIM No. 220, and with CALCRIM No. 222, which instructed that statements and questions of the attorneys are not evidence. We ordinarily presume the jury followed the instructions and disregarded the prosecutor's remarks to the extent they were inconsistent with the instructions. (*People v. Osband* (1996) 13 Cal.4th 622, 717.)

We conclude defendant's claim that the prosecutor improperly bound the jury to a theory that delayed reporting is not indicative of dishonesty during voir dire lacks merit.

2. *CALCRIM No. 1193*

The jury was instructed with CALCRIM No. 1193 as follows: "You have heard testimony from Dr. Blake Carmichael regarding child sexual abuse accommodation syndrome. [¶] Dr. Blake Carmichael's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [the alleged victims'] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." Defendant

contends this instruction violated his right to due process because it reduced the prosecution's burden of proof by allowing jurors to use the CSAAS testimony to determinate if the charges were true. We disagree.

" 'If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' [Citations.] ' " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " ' [Citation.] The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

Defendant's claim was rejected in *People v. Gonzales* (2017) 16 Cal.App.5th 494. We agree with that court that "[t]he purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert]'s testimony to conclude that [the child]'s behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert]'s testimony to conclude [the child] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert]'s testimony will find both that [the child]'s apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Id.* at p. 504; accord *People v. Munch* (2020) 52 Cal.App.5th 464, 474.) Defendant notes the third sentence in the instruction contains a double negative. We still conclude that when the instruction is read as a whole there is not a reasonable likelihood the jury misapplied it. We also disagree that the prosecution's closing arguments increased the likelihood the jury would misapply the instruction. The prosecutor stated the jury could not rely on the CSAAS expert's testimony "in and of itself in determining guilt or innocence. The whole

11

purpose of him being called is to explain to you the complexity and the myths, and to dispel some of the myths that exist when children report." The argument was consistent with the instruction and did not insert or exploit any ambiguity.

Additionally, defendant's assertion that the instruction is one-side because it only offered the option of finding a witness's conduct was consistent with his or her sexual abuse claim is incorrect. The jury was told they could consider the CSAAS evidence "in deciding whether or not [the witness's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." The instruction does not suggest what conclusion the jury should reach in evaluating the witness's believability. We therefore reject defendant's assertion that the instruction violates a due process right to impartiality. (See *People v. Grandberry* (2019) 35 Cal.App.5th 599, 610-611 [explaining origins and application of this concept].) "The trial court did not err in giving this instruction." (*People v. Munch*, *supra*, 52 Cal.App.5th at p. 474.)

### 3. Asserted Cumulative Error

Defendant claims the cumulative effect of the alleged errors we have discussed relating to CSAAS require reversal of his convictions. "We have rejected defendant's claims of error. When we have alternatively assumed error, we have found each possible error also to be harmless. Considering the possible errors together for the purposes of this claim, we also conclude that their cumulative effect does not warrant reversal of the judgment." (*People v. Westerfield* (2019) 6 Cal.5th 632, 728.)

### B. Instructions on Tolling

J.'s testimony indicated the conduct underlying defendant's conviction for violating section 288, subdivision (a), in count 13, occurred as early as 1994. At the time, the standard statute of limitations for this offense was six years. (*People v. Smith* (2011) 198 Cal.App.4th 415, 424.) However, section 803, subdivision (f) provides for extension of the statute of limitations so long as a criminal complaint is filed within one

year of the victim's report to law enforcement and all of the requirements set forth in subdivision (f)(2) are met.[4]  Accordingly, the information alleged J. reported the offense to law enforcement in March 2019, and that the statute of limitation was therefore tolled on count 13 pursuant to section 803, subdivision (f).  At trial, the jury was instructed on the elements of count 13 and also that the People had to prove the crime involved "substantial sexual conduct" as required to toll the statute of limitations.  (§ 803, subd. (f)(2)(B).)  The trial court did not instruct the jury on the further requirement that where the victim is, as was the case here, 21 years old or older when he reported, "independent evidence shall clearly and convincingly corroborate the victim's allegation."  (*Id.*, subd. (f)(2)(C).)  On appeal, defendant argues the trial court violated his right to a jury trial and due process on count 13 by failing to instruct on the need for clear and convincing corroborating evidence.  We disagree.

Defendant acknowledges we have previously explained that, "[i]f the People plead facts to avoid the bar of the statute of limitations, and the defendant fails to put the People to their proof in the trial court, then the defendant forfeits the statute of limitations issue and cannot raise it for the first time on appeal."  (*People v. Hamlin* (2009) 170

---

[4]  These requirements are:

"(A) The limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired.

"(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual.

"(C) There is independent evidence that corroborates the victim's allegation.  If the victim was 21 years of age or older at the time of the report, the independent evidence shall clearly and convincingly corroborate the victim's allegation.

"(3) Evidence may not be used to corroborate the victim's allegation if that evidence would otherwise be inadmissible during trial.  Independent evidence excludes the opinions of mental health professionals."  (§ 803, subd. (f)(2) & (3).)

Cal.App.4th 1412, 1439.) Further, where "defendant did not request jury instructions on the statute of limitations issues, he cannot argue on appeal that jury instructions should have been given." (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 425.) Nonetheless, defendant asserts his claim of instructional error is cognizable on appeal because "[i]nstructions regarding the *elements* of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503, italics added.) This principle is unhelpful to his argument because " 'the statute of limitations is not an "element" of the offense insofar as the "definition" of criminal conduct is concerned.' [Citation.] Although the right to maintain the action is an essential part of the final power to pronounce judgment, that right 'constitutes no part of the crime itself.' " (*People v. Linder* (2006) 139 Cal.App.4th 75, 84; accord *People v. Meza* (2011) 198 Cal.App.4th 468, 476-477.) Hence, the trial court has no sua sponte duty to instruct on section 803, subdivision (f). Defendant further argues he may raise the issue on appeal because the trial court *did* instruct on subdivision (f), but did so incorrectly. This assertion is unavailing because the court correctly instructed on the "substantial sexual conduct" requirement set forth in subdivision (f)(2)(B) and did not instruct on the corroboration requirement in subdivision (f)(2)(C) at all. "To the extent the instruction was incomplete, defendant may not be now heard to complain because he did not request clarifying language. '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Jones* (2013) 57 Cal.4th 899, 969.) For these reasons, we find no merit in his claim of instructional error.

Alternatively, defendant asserts his counsel rendered ineffective assistance in failing to request that the jury make a finding on corroboration.

To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard

14

of reasonableness under prevailing professional norms, and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

"Evidence of similar offenses against an uncharged victim has a tendency in reason to prove a disputed fact that is of consequence to the determination of the section 803, subdivision ([f]), issue. [Citation.] Consequently, . . . such evidence, if credited by the trier of fact, may standing alone constitute independent evidence that clearly and convincingly corroborates the victim's allegation." (*People v. Mabini* (2001) 92 Cal.App.4th 654, 659.) Prior to trial, the defense moved to dismiss various counts, including 13, based on the statute of limitations. The prosecution indicated it would use the other charged offenses as corroboration for count 13. At the hearing on the motion, the court concluded the People had made a prima facie showing that the statute of limitations had not expired and it would ultimately depend on the evidence at trial. The trial court and counsel briefly discussed how a jury instruction on corroboration could be phrased given that the other offenses were charged, but deferred the question. Defendant asserts "[t]he on-the-record discussion suggests the court and counsel may have believed a specific finding of clear and convincing corroboration unnecessary because that standard would necessarily be satisfied by a finding of proof beyond a reasonable doubt

15

on the allegations involving the other three complainants." Defendant argues this reflects a misunderstanding of the case law because the fact that the jury could find clear and convincing corroboration from the other charged crimes does not mean that it must: "[T]he precise probative value to be accorded this evidence will depend on various considerations, such as the frequency of the uncharged acts and their similarity and temporal proximity to the charged acts." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 404; accord *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 682.)

Our Supreme Court has "observed that '[a]n appellate court's ability to determine from the record whether an attorney has provided constitutionally deficient legal representation is in the usual case severely hampered by the absence of an explanation of an attorney's strategy.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653.) This is such a case. Defendant infers trial counsel did not understand she could argue the evidence of the other offenses was not sufficiently probative to corroborate J.'s complaints even if it found these offenses true beyond a reasonable doubt, but this is only an assumption rather than a fact affirmatively disclosed in the record. Further, the assumption appears unsupported. Defense counsel quoted from the cited portion of *People v. Yovanov*, *supra*, 69 Cal.App.4th 392. At one point, she suggested an instruction could tell the jury that if it found the other witnesses credible, "based on the similarity, you can find clear and convincing evidence of corroboration for the charges that they need to prove beyond a reasonable doubt." On this record, it appears trial counsel understood the pertinent law regarding similarity and chose not to utilize it for tactical reasons. During closing argument, defense counsel focused on the counts that carried with them a sentence of life without the possibility of parole. She discussed J.'s complaints only in passing and did not focus on any dissimilarities or the passage of time between his claims and the other victims' claims. As we will discuss later, trial counsel likely believed count 13 would subject defendant to an additional term of 2 years (one-third the middle term of 6 years). She could have reasonably determined that arguing J.'s allegation was not sufficiently

16

similar to other allegations would make no meaningful difference to defendant's sentence and risk encouraging the jury to view his younger daughter's allegations as relatively stronger than J.'s when it was hers that were critical to the defense. We cannot conclude on this record that counsel did not have a rational tactical purpose in not requesting an instruction specific to this issue.

The People do not argue defendant's trial counsel had any rational tactical purpose in failing to press the issue or otherwise rendered effective assistance. Rather, they argue defendant was not prejudiced. The People contend that given the guilty verdicts on all the other charges before the jury and the similarity of the offenses, it is not reasonably probable the jury would have found anything other than clear and convincing corroboration. All of the alleged offenses took place in defendant's home and the victims were all prepubescent family members entrusted to his care. Defendant argues J. was a boy, younger at the time of count 13 than the other victims, and the only victim who alleged defendant committed an act of oral copulation. We have previously stated that "the corroboration does not have to corroborate each allegation in the criminal pleading, only the 'victim's allegation.' " (*People v. Ruiloba*, *supra*, 131 Cal.App.4th at p. 683.) All of the victims described lewd acts committed by defendant that occurred when they were of a similar age. As a whole, J.'s allegation is strikingly similar to the other victims' allegations. Under the circumstances, we agree with the People that it is not reasonably probable a jury instruction on the issue would have led the jury to conclude J.'s allegation lacked clear and convincing corroboration. (See *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1291, disapproved on other grounds in *People v. Shockley* (2013) 58 Cal.4th 400, 406 ["Given the number of different victims and the similarity in [two complainants'] allegations, it is not reasonably probable that the passage of time or age differences would have led the jury to conclude that [one of the complainant]'s allegations lacked clear and convincing corroboration"].) Accordingly, we must reject defendant's ineffective assistance of counsel claim.

17

*C.      One Strike Law*

Defendant was sentenced under section 667.61, sometimes referred to as the One Strike Law, "which provides an alternative, more severe set of penalties for certain sex offenses committed under certain enumerated circumstances."  (*People v. Anderson* (2020) 9 Cal.5th 946, 954 (*Anderson*).)  He raises several issues pertaining to his sentencing.

*1.      Pleading*

Defendant was convicted in counts 8, 9, 10, 12, 13, 14, and 15 of committing a lewd and lascivious act on a child under 14 under section 288, subdivision (a).  He contends the trial court erred in imposing sentences of 15 years to life on these counts because the information did not include a multiple victim allegation as to those counts. We agree.

The One Strike law applies to sex crimes specified in section 667.61, subdivision (c).  Among those is a lewd or lascivious act in violation of section 288, subdivision (a). (§ 667.61, subd. (c)(8).)  A conviction for this offense can result in one of two heightened sentences.[5]  The sentence will be 15 years to life if the jury finds one or more of the "circumstances" listed in section 667.61, subdivision (e).  (§ 667.61, subd. (b).)  The sentence will be 25 years to life if the jury finds either (1) two of the "circumstances" listed in section 667.61, subdivision (e), or (2) one of the more aggravated "circumstances" listed in section 667.61, subdivision (d).  (§ 667.61, subd. (a).)

"The One Strike law specifically spells out what the People must do in order to invoke its greater penalties:  'The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in

_____

[5]  For other specified sex crimes, a defendant may be sentenced to life without parole in certain circumstances where the victim is under 14.  (§ 667.61, subds. (a), (j)(1), (*l*).)

18

open court or found to be true by the trier of fact.' (§ 667.61, subd. (o).)" (*People v. Perez* (2015) 240 Cal.App.4th 1218, 1223.)

The multiple victim qualifying circumstance is set forth in section 667.61, subdivision (e)(4): "The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." Our Supreme Court has explained that this circumstance must be specifically pled even though it can be established from the mere fact of ultimate conviction of qualifying sex offenses against multiple victims. (*People v. Mancebo* (2002) 27 Cal.4th 735, 752 (*Mancebo*).) This specificity is mandated not only by the language of the One Strike law but also by the defendant's "cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Id.* at p. 747.) The prosecution need not specify a particular numerical provision so long as the accusatory pleading affords the defendant "fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing." (*Id.* at p. 754.)

In this case, both the original and the amended information alleged as a "count enhancement" as to counts 1 through 3 several circumstances that qualified for One Strike sentencing, including that defendant "has been convicted in the present case" of committing an offense specified in section 667.61, subdivision (c), against more than one victim. (§ 667.61, subd. (e)(4).) The original information also alleged pursuant to section 667.61, subdivision (d)(1) as a "case enhancement" that "as to [c]ounts 1, 2, 3, and 8 through 16 inclusive that [defendant] has been previously convicted of an offense" specified in subdivision (c). Defense counsel noted prior to trial that the subdivision (d)(1) circumstance could not apply because defendant had no previous conviction. Additionally, the court asked, with respect to the multiple victim allegation count enhancement as to count 1, if it was "more appropriate to have a case enhancement covering that issue as opposed to a count enhancement." The court explained "if you use

19

the language that he ['[has been convicted,['] it seems like it's got to be a case enhancement, because I don't know how you could find it appropriate to say that as a count enhancement." Counsel for defendant and the prosecution agreed that the multiple victim allegation count enhancements as to counts 1, 2, and 3 should "be removed as a count enhancement and substituted in as a case enhancement."

The prosecution amended the information to allege as a case enhancement that "as to counts 1, 2, 3, and 8 through 15 inclusive, that [defendant] is a person described in [s]ection 667.61[, subdivision ](b) [which authorizes a sentence of 15 years to life] . . . in that the offenses described in above counts 1, 2, 3 and 8 through 15 inclusive were committed under one or more of the circumstances specified in [s]ections 667.61[, subdivision ](d) and 667.61[, subdivision ](e) . . . ." The court remarked this case enhancement was "pretty general" and "obviously the instruction will have to be specific." The prosecution explained it retained the multiple victim allegation count enhancement because "we do have a notice requirement, giving notice to everything we are charging."

The trial court instructed the jury, "If you find the defendant guilty of two or more sex offenses, as charged in Counts One through Five [*sic*] and Eight through Fifteen, you must then decide whether the People have proved the additional allegation that those crimes were committed against more than one victim." The jury found the allegation true. The verdict form stated, "We, the Jury sworn to try the above-entitled case, having found the Defendant . . . guilty of Counts 1, 2, 3 or 8-15, further find the case enhancement charged within the meaning of Section 667.61(e)(4) . . . , MORE THAN ONE VICTIM, as alleged in Count Enhancements 1E, 2F and 3F of the First Amended Information to be: [¶] True."

At sentencing, the prosecutor called probation's recommendation of a 15 year-to-life sentence on defendant's convictions for violating section 288, subdivision (a) incorrect, and argued the triad should be 3, 6, and 8 years. The trial court asked whether

20

the case enhancement suggested those counts should be enhanced because of the multiple victim circumstance. The prosecutor responded, "I would defer to the Court, your Honor, I do know when we did an amendment we did include the victim language at the end for all counts." Defense counsel said she had no comment. The trial court sentenced defendant to consecutive sentences of 15 years to life on these counts.

On appeal, the People agree the information was defective because the case enhancement did not "provide 'notice of *which* qualifying circumstance or circumstances are being invoked' [citation]. It is not enough to refer to all of them." (*People v. Perez, supra*, 240 Cal.App.4th at p. 1226.) However, the People argue defendant forfeited the issue by failing to object at sentencing, and the sentences should be affirmed because defendant suffered no prejudice. We disagree.

Our Supreme Court's decision in *Anderson*, *supra*, 9 Cal.5th 946 is instructive. In *Anderson*, the defendant argued for the first time on appeal that the trial court erred in imposing 25-year-to-life vicarious firearm discharge enhancements (§ 12022.53, subds. (d), (e)) on five robbery counts when the enhancement had only been alleged as to a different count. (*Anderson, supra*, at pp. 950-952.) The court held: "The pleading must provide the defendant with fair notice of the potential sentence. A pleading that alleges an enhancement as to one count does not provide fair notice that the same enhancement might be imposed as to a different count. When a pleading alleges an enhancement in connection with one count but not another, the defendant is ordinarily entitled to assume the prosecution made a discretionary choice not to pursue the enhancement on the second count, and to rely on that choice in making decisions such as whether to plead guilty or proceed to trial. [Citations.] Fair notice requires that every sentence enhancement be pleaded in connection with every count as to which it is imposed." (*Id.* at pp. 956-957)

In *Anderson*, the court rejected the proposition that an unpleaded enhancement necessarily results in unauthorized sentence correctable at any time, including if first raised on appeal. (*Anderson, supra*, 9 Cal.5th at p. 962.) However, an appellate court

21

has discretion to "decide an otherwise forfeited claim where the trial court has made an error affecting 'an important issue of constitutional law or a substantial right.' " (*Id.* at p. 963.) In *Anderson*, the court concluded the trial court had made such an error for three reasons. (*Ibid.*) For the same reasons, we conclude the error in this case is within our discretion to correct.

First, the *Anderson* court said the error was "clear and obvious"; that is, the trial court imposed enhancements that were "never pleaded, in contravention of the express pleading requirements of the relevant statutes." (*Anderson, supra*, 9 Cal.5th at p. 963.) The same is true here.

Second, "the error affected substantial rights by depriving [defendant] of timely notice of the potential sentence he faced." (*Anderson, supra*, 9 Cal.5th at p. 963.) The People argue defendant had actual notice of the prosecution's intent to seek One Strike sentencing on counts 8 through 15 based on the multiple victim circumstance allegation. We disagree. Defendant had notice that the prosecution intended to seek enhanced sentencing on counts 1 through 3, and that the multiple victim allegation could be supported by a conviction on other counts. But we cannot conclude defendant had notice the prosecution would seek One Strike sentencing on counts 8 through 15. The case enhancement was not clear enough to convey this information; nor was the verdict form or the jury instruction. They can all be interpreted consistently with the understanding that these counts could be used to support the multiple victim allegations in counts 1, 2, and 3. Further, the record shows the prosecution went into the sentencing hearing with the understanding that One Strike sentencing would not apply to the section 288, subdivision (a) convictions. As defendant notes, there is no reason to suppose he had a different understanding. Further, notice provided at sentencing is inadequate. (*Anderson, supra*, at p. 963) As in *Anderson*, "there was no midtrial discussion highlighting the prosecution's intent" to seek a One Strike sentence on any of the counts at issue. (*Ibid.*)

22

Thus, we must conclude "the error affected substantial rights by depriving [defendant] of timely notice of the potential sentence he faced." (*Ibid.*)

Third, "the error was one that goes to the overall fairness of the proceeding." (*Anderson, supra*, 9 Cal.5th at p. 963.) The error here, as in *Anderson*, impacts the fairness of the trial and sentence.

In addition to their assertion that defendant had actual notice, which we have already rejected, the People argue defendant suffered no prejudice because his defense would have been the same had the multiple victim circumstance been specifically alleged. This was also true in *Mancebo, supra*, 27 Cal.4th 735, and there the court struck the enhancements anyway, explaining that "in many instances a defendant's decision whether to plea bargain or go to trial will turn on the extent of his exposure to a lengthy prison term." (*Id*. at p. 752; see *id.* at pp. 750-751.) The People argue this concern was not present here because defendant faced life without parole on other counts. While this is true, the possibility of a life sentence on seven additional counts relating to other victims goes to "the extent of his exposure to a lengthy prison term," and we cannot conclude the fact that defendant could face them is insignificant. "As *Mancebo* makes clear, the purpose of a statutory pleading requirement is not simply to ensure the defendant has notice of the potential sentence on the day of sentencing. It is meant to give sufficient notice to permit the defense to make informed decisions about the case, including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial." (*Anderson, supra*, 9 Cal.5th at p. 964.) Here, the defense appeared to focus on the three counts that carried potential sentences of life without parole. It is certainly possible that an understanding that all of the counts carried with them a potential life term could have resulted in a different approach.

Defendant "received inadequate notice of the potential sentence he faced, and the deficiently was not harmless." (*Anderson*, *supra*, 9 Cal.5th at p. 964.) Accordingly, we

23

must order the sentences on counts 8, 9, 10, 12, 13, 14, and 15 stricken and remand for resentencing.[6]

2.    *Count 3*

Defendant argues the trial court erred in imposing a One Strike sentence on count 3 because section 667.61 does not apply to a conviction for sodomy under section 286, subdivision (c)(1).  We agree.  One Strike sentencing only applies to a "person who is convicted of an offense specified in subdivision (c)" of section 667.61.  (§ 667.61, subds. (a)-(b).)  Subdivision (c)(1) of section 286 is not an offense specified in subdivision (c) of section 667.61.  A violation of subdivision (c)(2) or (3) of section 286 is an offense specified in subdivision (c) that qualifies for One Strike sentencing (§ 667.61, subd. (c)(6)), but each of these crimes require additional elements, such as that the act "is accomplished against the victim's will by means of force of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" (§ 286, subd. (c)(2)).  As such, defendant's sentence for count 3 is unauthorized.

The People argue the prosecution's reference to subdivision (c)(1) of section 286 in the information was "a clerical error," defendant had notice of the charge he had to defend and an opportunity to do so, and the jury found all the facts required for forcible sodomy through other findings.

---

[6]  The One Strike Law took effect on November 30, 1994, and prescribes sentences that "greatly exceed the determinate sentences previously available for violations of section 288.  Therefore, the ex post facto clauses of the United States and California Constitutions preclude sentencing under section 667.61 for offenses committed before November 30, 1994."  (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 257.)  Defendant argues, and the People concede, that the trial court erred in imposing One Strike sentencing on count 13 because the prosecution did not establish the offense was committed when the law was in effect.  The People's concession is appropriate (see *id.* at pp. 257-262), but we have already concluded One Strike sentencing on this count was improper due to lack of notice.

24

We begin with the identity of the crime defendant was convicted of in count 3, as it is dispositive of the issue before us. "A person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense." (*In re Hess* (1955) 45 Cal.2d 171, 174-175; see also *People v. West* (1970) 3 Cal.3d 595, 612 ["When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime"].) "[R]easonable doubts in determining the identity of the offense charged are to be resolved in the defendant's favor." (*People v. Schueren* (1973) 10 Cal.3d 553, 558.) Here, the record leaves no room for doubt. In count 3 of the amended information, defendant was charged with sodomy with a person under 14 years of age and more than 10 years younger than him in violation of section 286, subdivision (c)(1). The information suggests the prosecution believed count 3 was subject to One Strike sentencing, but the pleading clearly referred to a crime that was not, both by statute and description. While discussing the jury instructions, the prosecutor appeared to refer to the lesser included offenses for sodomy by force, fear, or threats, but the trial court corrected him, and the jury was correctly instructed on the charged crime of sodomy with a person under 14. (See CALCRIM Nos. 1030, 1090.) A defendant may consent to the consideration of an uncharged offense by the trier of fact. (*People v. Toro* (1989) 47 Cal.3d 966, 973, disapproved on another point in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) However, defendant could not have consented to the consideration of a crime that was never actually considered (even if it may have been effectively considered). The jury convicted defendant of violating section 286, subdivision (c)(1), and this was the offense on which the court pronounced a sentence and that is reflected in the abstract of judgment. The People argue the sentence should be affirmed, but the sentence is unauthorized without a qualifying conviction and thus may be corrected on appeal. (§ 667.61, subds. (a)-(b); *People v. Smith* (2001) 24 Cal.4th 849, 852.) To affirm

the sentence, however, we would need to alter the underlying conviction on appeal despite the fact it is not erroneous. The People offer no authority suggesting we may do so. Therefore, we will strike the sentence on count 3 and remand for resentencing.

*D.* *Kidnapping*

In count 6, defendant was convicted of aggravated kidnapping. (§ 209, subd. (b)(1).) The jury also found true kidnapping allegations under the One Strike law as to counts 1, 2, and 3.[7] (§ 667.61, subds. (e)(1), (d)(2).) Defendant contends the evidence was insufficient to support his conviction for aggravated kidnapping or the true findings on the kidnapping allegations. Specifically, he argues the movement from the living room to his bedroom was insufficient to support the asportation requirements for his conviction and these circumstances. During an interview, his younger daughter estimated the distance between the couch and the bed was five or six steps.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

---

[7] As we discussed in Part II.C.2, count 3 was not eligible for One Strike sentencing. As we will discuss in Part II.E, count 2 was based on the same facts as the sodomy.

26

Aggravated kidnapping occurs when a person kidnaps another individual to commit specified crimes, including rape, sodomy, or a violation of section 288. (§ 209, subd. (b)(1).) Section 667.61 provides for increased punishment if a person commits certain felony sex offenses, including rape and a lewd or lascivious act by force or violence (§ 288, subd. (b)) as reflected in counts 1 and 2, and kidnaps the victim. (§ 667.61, subds. (b), (c), (e)(1).) Section 667.61 provides for even greater punishment if the movement of the victim substantially increased the risk of harm to the victim beyond that necessarily inherent in the underlying offense. (§ 667.61, subds. (a), (d)(2).)

With respect to asportation, aggravated kidnapping requires movement of the victim that "is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).) The section 667.61, subdivision (d)(2) sentencing allegation requires that "the movement of the victim *substantially* increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61, subd. (d)(2), italics added; see *People v. Perkins* (2016) 5 Cal.App.5th 454, 466, fn. 4 ["Since 1997, there is a difference in the asportation standards for the crime of aggravated kidnapping to commit . . . rape and for aggravated kidnapping alleged as a one strike enhancement to a sex crime. The former requires a showing that the movement increased the risk of harm to the victim, while the latter requires a showing that the movement *substantially* increased the risk of harm to the victim"].)

Whether the movement of the victim was merely incidental to the commission of the underlying crime, is a "multifaceted, qualitative evaluation" that is interrelated with the requirement that the movement increase the risk of harm to the victim. (*People v.*

27

*Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).)[8] The jury must consider " 'the "scope and nature" of the movement,' as well as 'the context of the environment in which the movement occurred.' " (*Id.* at p. 1151, emphasis omitted.) " '[A] rape . . . does not necessarily require movement to complete the crime.' [Citation.] Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*People v. Shadden* (2001) 93 Cal.App.4th 164, 169; see also *People v. Salazar* (1995) 33 Cal.App.4th 341, 347 ["while the movement was perhaps incidental to [defendant]'s particular plan for rape, it was not incidental to the actual commission of the crime itself"].)

In determining whether the movement increased the risk of harm to the victim, the jury should consider the surrounding circumstances, "such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.) Furthermore, the increased risk may be of either physical or psychological harm. (*People v. Nguyen* (2000) 22 Cal.4th 872, 885-886).

Significantly, "no minimum distance is required to satisfy the asportation requirement" and the measured distance of the movement, while relevant, must be considered in context. (*Dominguez, supra*, 39 Cal.4th at p. 1152.) "In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient." (*Ibid*.) To illustrate this point, our Supreme Court has explained:

---

[8] "Prior to 1997, the asportation standard for the crime of aggravated kidnapping mirrored that for the aggravated kidnapping enhancement. [Citation.] We thus rely on cases, such as *Dominguez*, that concerned the pre-1997 standard for the crime of aggravated kidnapping as well as cases regarding the kidnapping enhancements to guide our review here." (*People v. Perkins*, *supra*, 5 Cal.App.5th at p. 466, fn. 4.)

"For example, moving robbery victims between six and 30 feet within their home or apartment [citation] or 15 feet from the teller area of a bank to its vault [citation] may be viewed as merely incidental to the commission of the robbery and thus insufficient to satisfy the asportation requirement of aggravated kidnapping. Yet, dragging a store clerk nine feet from the front counter of a store to a small back room for the purpose of raping her [citation] or forcibly moving a robbery victim 40 feet within a parking lot into a car [citation] might, under the circumstances, substantially increase the risk of harm to the victim and thus satisfy the asportation requirement." (*Dominguez, supra*, 39 Cal.4th at p. 1152.)

Here, substantial evidence supports the jury's conclusion that moving the victim into the bedroom was not merely incidental to the commission of the underlying offenses and substantially increased the victim's risk of harm. This case is unlike *People v. Perkins*, *supra*, 5 Cal.App.5th 454. In *Perkins*, movement from one room to another in a residence was not substantial because it was not likely the victim could have escaped from either room, and the defendant's opportunities were the same in both. (*Id*. at p. 470.) Further, in *Perkins*, this court noted there was no evidence the door to either room was closed. (*Ibid*.) Here, defendant took his younger daughter from a room that was occupied into a room that was unoccupied and closed the door. Defendant also threatened to kill her and her brothers if she yelled. In this context, the movement decreased the likelihood of detection and increased defendant's time and opportunity to commit further acts. The evidence reasonably supports the jury's finding that defendant's movement of his daughter was not merely incidental to the commission of the intended rape, sodomy, or lewd act, and substantially increased the risk of harm to her. We will affirm the jury's conviction on count 3 and its true findings on the kidnapping allegations under the One Strike law.

*E.      Section 654*

Defendant was convicted in count 2 of a lewd and lascivious act on a child under the age of 14 by force or violence. At sentencing, the prosecutor stated he believed the sentence on count 2 should be stayed under section 654 "to [c]ounts 1 and 3." The court disagreed without further explanation and imposed a consecutive sentence on count 2. On appeal, defendant asserts this was error. We agree.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[T]his statute does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time.' " (*People v. Hicks* (1993) 6 Cal.4th 784, 788, fn. 4.) However, a defendant cannot be separately punished for a lewd act "under section 288 and another applicable statute for the *same* criminal act." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6, italics added.)

Defendant's argument relies in part on *People v. Siko* (1988) 45 Cal.3d 820 (*Siko*). "*Siko* is . . . authority that where there *is* a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1339, italics added.) However, "in the absence of some circumstance 'foreclosing' its sentencing discretion (as in *Siko* . . .), a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts." (*Id.* at p. 1340.)

In *Siko*, the trial court erred when it did not stay the sentence on a lewd act conviction where "the charging instrument and the verdict both [identified] the lewd conduct as consisting of the rape and sodomy rather than any other act. Nor did anything in the prosecutor's closing argument or in the court's instructions suggest any different emphasis." (*Siko, supra*, 45 Cal.3d at p. 826.) In *Siko*, the People argued on appeal there

30

was evidence of other conduct that could support the lewd act conviction, because the defendant had separately twisted a handkerchief around the victim's neck and undressed her. (*Id.* at p. 825.) But the "claim [was] untenable" because "[t]here [was] no showing that the lewd-conduct count was understood in this fashion at trial" and a "review of the record demonstrate[d] the contrary." (*Id.* at pp. 825, 826.)

Here, the People's assertion that defendant's earlier touching of the victim when he moved her to his bedroom, when he touched her over her underwear, or when he removed her clothing could support count 2 is also untenable. However, a review of the record demonstrates the jury based its conviction on the sodomy, thereby foreclosing the trial court from relying on a different set of facts in applying section 654. The additional allegations attached to count 2, and ultimately found true by the jury, required the jury to use the sodomy to find defendant guilty of count 2.[9] The prosecutor argued the bodily harm circumstance (§ 667.61, subd. (d)(7)) alleged as to counts 2 and 3 was supported by the evidence of trauma to the victim's anus. The People have identified no evidence that would support a finding of bodily harm in the commission of any of the lewd acts they identity. Rather, they argue the jury's finding that defendant personally inflicted bodily harm on the victim does not foreclose the exercise of the court's discretion because the jury did not necessarily determine that defendant caused the harm in the commission of count 2. This argument is not supported by any case law construing section 667.61, subdivision (d)(7). Further, subdivision (d)(7) must be read in conjunction with subdivision (k), which provides: "As used in this section, 'bodily harm' means any

---

[9] The prosecution also argued with respect to the element of force that "the same facts and evidence that are going to get you to forcible rape apply here, because this is based on the same conduct. Force was used in all of these situations." To the extent the prosecution suggested count 2 could be based on the rape as opposed to the sodomy, it appears the jury disregarded that suggestion. Regardless, section 654 would apply to count 2 if it was based on the rape.

31

substantial physical injury resulting from the use of force that is more than the force necessary to commit an offense specified in subdivision (c)." (§ 667.61, subd. (k).) Accordingly, the jury was instructed: "If you find the defendant guilty of the crimes charged in Counts Two or Three, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant personally inflicted bodily harm to L[.] You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime. [¶] *Bodily harm* means any substantial physical injury resulting from the use of force that is more than the force necessary to commit the crime." In light of these instructions, we must conclude the jury understood the bodily harm allegation required a harm that was tied to the offense and, therefore, none of the People's suggested facts could have formed the basis for the jury's conviction in count 2. Rather, the jury must have based count 2 on the rape or sodomy as the prosecution suggested. Thus, the sentence on count 2 should have been stayed.

F.      Fines and Fees

At sentencing, the trial court ordered defendant to pay various fees and fines including a $3,300 restitution fine (§ 1202.4, subd. (b)), plus a restitution collection fee of 10 percent; a $3,300 parole revocation restitution fine, suspended pending successful completion of parole (§ 1202.45); a $440 court operations assessment (§ 1465.8); and a $330 court facilities assessment (Gov. Code, § 70373).

1.      *Dueñas*

Defendant contends his trial counsel rendered ineffective assistance by not objecting to these amounts or requesting a hearing on his ability to pay them.

Defendant's argument is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The *Dueñas* court held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court also held "that

32

although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*) We are not persuaded that the analysis used in *Dueñas* is correct.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp*, *supra*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Having done so, we reject defendant's *Dueñas* challenge and his derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless argument does not demonstrate ineffective assistance of counsel].)

2.     *Restitution Collection Fee*

The People argue the abstract of judgment should be corrected to reflect the 10 percent restitution collection fee that was orally pronounced but not reflected in the abstract of judgment. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement

controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)  We have already ordered resentencing that will necessitate a new abstract of judgment.  We therefore direct the trial court to make the necessary corrections at that time.

### III.  DISPOSITION

The matter is remanded for resentencing consistent with this opinion.  On resentencing, the sentence on count 2 shall be stayed and the trial court may not impose One Strike sentences on counts 3, 8, 9, 10, 12, 13, 14, or 15 under section 667.61.  The abstract of judgment and minute order shall reflect the oral pronouncement of judgment with respect to the 10 percent restitution collection fee.  The judgment is otherwise affirmed.

/S/

_____

RENNER, J.

I concur:

/S/

_____

HOCH, J.

34

MAURO, Acting P. J., Concurring and Dissenting.

I fully concur in the majority opinion except for part II.F.1. of the Discussion, pertaining to defendant's challenge to the imposed fines and assessments, as to which I dissent.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held it is improper to impose certain fines or assessments without determining defendant's ability to pay. (*Id*. at pp. 1168, 1172.)  Although some courts have subsequently criticized *Dueñas*'s legal analysis (see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946), *Dueñas* remains citable precedent.  Until the California Supreme Court has had an opportunity to resolve the current split in authority, I believe it is appropriate in certain cases to remand the matter to give the trial court an opportunity to consider defendant's ability to pay.

Here, defendant's November 2019 sentencing occurred after *Duenas* was decided, but defendant's counsel did not raise an ability to pay challenge at the sentencing hearing. Accordingly, an ability to pay challenge is forfeited regarding the fines and assessments. Nevertheless, because defendant now asserts ineffective assistance of counsel, I would remand the matter and direct the trial court to assess defendant's ability to pay the fines and assessments.

/S/

_____
MAURO, Acting P. J.

1